[S. F. No. 10778. In Bank.—November 30, 1923.]

# ALLIED ARCHITECTS' ASSOCIATION OF LOS ANGELES, Petitioner, v. H. A. PAYNE, as Auditor of Los Angeles County Respondent.

[1] PUBLIC PURPOSES—PROMOTION OF PATRIOTISM.—The promotion of patriotism, involving as it does the sense of self-preservation, is not only a public purpose but the most elemental of public purposes.

[2] ID.—MEMORIAL HALL.—The erection of a building as a memorial hall, to the extent that it would serve as a stimulus to patriotism, would be for a public purpose.

[3] ID.—MEANS AND METHODS OF PROMOTING PUBLIC PURPOSE—LEGISLATIVE DISCRETION.—The means and methods of promoting a public purpose by legislative enactment are ordinarily for legislative determination.

[4] ID.—SPECIAL USE OF MEMORIAL BUILDING.—It is not necessary that a proposed memorial building, the use of which is designed to promote patriotism, shall be open to the public generally in order to bring its erection and maintenance within the meaning and designation of a public purpose; but its use and occupancy should be limited to those associations which are built upon patriotism and perpetuated for its preachment.

[5] ID.—CLASSIFICATION FOR LEGISLATION—VETERANS AS A WHOLE—CONSTITUTIONAL LAW.—Veterans of every war are, as a whole, a reasonable classification, within the purview of the constitution, for legislation which has in view the conferring of benefits upon them.

[6] ID.—USE OF MEMORIAL HALL—LIMITATION TO ASSOCIATIONS OF VETERANS.—The limitation of the use of a memorial hall to associations of veterans is not open to the objection that a classification into a subclass has been made which is unreasonable and, therefore, falls within the inhibition of the constitution.

[7] ID.—APPROPRIATION OF PUBLIC FUNDS FOR PATRIOTIC MEMORIAL—CONSTITUTIONAL LAW.—The appropriation by a county of funds, under section 4041f of the Political Code, enacted in 1921, for the erection and maintenance of a memorial building to be used exclusively as a meeting place for patriotic, fraternal and benevolent associations, whose membership shall be composed only of veteran soldiers, sailors, and marines who have served the United States honorably in any of its wars, and to the exclusion of all persons

Constitutionality of welfare acts for veterans of World War, note, 22 **A. L. R.** 1542.

not members of such associations, does not violate the provision of the constitution prohibiting gifts of public moneys to any individual, municipal, or other corporation.

APPLICATION for a Writ of Mandate requiring the Auditor of Los Angeles County to approve claims for services. Writ granted.

The facts are stated in the opinion of the court.

Milton Shapiro, George J. Hatfield, John U. Calkins, Jr., M. B. Silberberg and Walter K. Tuller for Petitioner.

E. T. Bishop, County Counsel, and Ivan G. McDaniel, Deputy County Counsel, for Respondent.

LENNON, J.—This is an application for a writ of mandate directing the respondent, as county auditor of the county of Los Angeles, to approve the claim of the Allied Architects' Association and the claim of C. W. Maples, duly assigned to said Association. The claim of the Association is for services rendered in the preparation of certain architectural plans for a proposed "Victory Hall," for which an appropriation of five hundred thousand dollars has been made by the board of supervisors of the county of Los Angeles. The claim of C. W. Maples is for services in the form of labor rendered in maintaining the present temporary quarters designated and dedicated by the board of supervisors for the use of patriotic, fraternal, and benevolent associations, composed of veteran soldiers, sailors, and marines who have served the United States honorably in any of its wars.

The purposes for which the proposed Victory Hall is to be erected and maintained by the county of Los Angeles are contained in the declaratory clauses of a resolution of the board of supervisors adopted on July 13, 1923, which reads as follows:

"It is resolved by the board,

"1. That said Victory Hall, for which an appropriation of $500,000 has been made by this Board, is to be erected, supplied and maintained by Los Angeles County, and is at all times to be used exclusively as a meeting place for the use of patriotic, fraternal and benevolent associations,

whose membership shall be composed only of veteran soldiers, sailors and marines who have served the United States honorably in any of its wars, and to the exclusion of all persons not members of such associations.

"2. That said present temporary Victory Hall, now supplied and maintained by the said County, is exclusively used for the purposes above mentioned, and none other."

The appropriation of five hundred thousand dollars for the erection of the building to be known as Victory Hall and the maintenance of a temporary building for the uses specified in the above resolution was made under and by virtue of section 4041f of the Political Code, enacted by the legislature in 1921 (Stats. 1921, p. 476), which is as follows:

"Any county may provide and maintain (1) a home or homes for veteran soldiers, sailors and marines who have served the United States honorably in any of its wars; (2) buildings, memorial halls, or meeting places for the use of patriotic, fraternal and benevolent associations of such persons. For these purposes the board of supervisors of any county shall have jurisdiction and power:

"(a) To purchase, receive by donation, take by condemnation, lease or otherwise acquire, real or personal property necessary for such building or buildings, and to improve, preserve, take care of, manage and control the same.

"(b) To purchase, construct or lease, build or rebuild, furnish or refurnish, or repair any and all such buildings, and to provide all necessary custodians, employees, attendants and supplies for the proper maintenance of the same.

"(c) To levy in any year a special tax not to exceed three mills on the one dollar of assessed valuation on all taxable property in the county, such tax to be in addition to all other taxes provided for and the fund so created to be expended for the purposes hereof.

"(d) To establish a fund or funds for the purposes hereof, and to transfer from the general fund to such fund or funds, from time to time, such moneys as the board may deem necessary.

"(e) To incur, in the manner provided by law, a bonded indebtedness on behalf of the county for any of the purposes hereof."

Both claims, although regularly approved by the board of supervisors, were refused approval by the county auditor

192 Cal.—28

upon the ground that subdivision 2 of the code section above quoted, by virtue of which the debts were incurred, is unconstitutional and void, in that (1) it is in violation of article I, sections 11 and 21, of the state constitution; (2) the statute provides for the expenditure of public money for other than public purposes, and (3) the statute provides for the making of a gift of "public money or thing of value" contrary to article IV, section 31, of the constitution.

The gravamen of the contention that the statute in question is unconstitutional is that it limits the use of the building, when erected, to "patriotic, fraternal and benevolent associations, whose membership shall be composed of veteran soldiers, sailors and marines who have served the United States honorably in any of its wars, and to the exclusion of all persons not members of such associations." In other words, it is not the erection of the building to which objection is made, but it is its dedication to a particular use. In this behalf it is claimed that the limitation of its use subjects the entire plan to the constitutional inhibitions against the granting of special privileges, the expenditure of public money for a private purpose, and the making of a gift of public money or thing of value.

[1]  It is settled beyond question that the promotion of patriotism, involving as it does the sense of self-preservation, is not only a public purpose but the most elemental of public purposes. (*Veterans' Welfare Board* v. *Riley*, 188 Cal. 607 [206 Pac. 631]; *People* v. *Westchester Nat. Bank*, 231 N. Y. 465 [15 A. L. R. 1344, 132 N. E. 241]; *Opinion of Justices*, 211 Mass. 608 [98 N. E. 338].) The continuity of our governmental institutions is dependent in a large measure upon the perpetuation of a patriotic impulse which is but the willingness to sacrifice all for the ideas and the ideals which form the foundation stones of our republic. It will not be gainsaid that patriotism is promoted by the erection of a memorial monument, be it granite shaft or building, symbolic of the soldier's spirit of sacrifice, conceived and consummated in recognition of his deeds of heroic daring, and perpetuating in grateful remembrance those who dedicated their lives to the service of their country. Such a monument brings visibly and effectually before the minds of the present and future generations the sacrifices of the past. [2]  It is conceded, as indeed it must

be, that the erection of a building as a memorial hall, to the extent that it would serve as a stimulus to patriotism, would be for a public purpose. (*Kingman* v. *City of Brockton,* 153 Mass. 255 [11 L. R. A. 123, 26 N. E. 998] ; *Barrow* v. *Bradley,* 190 Ky. 480 [227 S. W. 1016] ; *Hill* v. *Roberts,* 142 Tenn. 215 [217 S. W. 826].)

Of course, it goes without saying that it is not necessary that such a building shall stand vacant in order to be effective for the purpose for which it was designed and erected. True, the building standing vacant would accomplish, in a measure, the purpose for which it was designed, but if its mere erection would have the effect of promoting and stimulating patriotism then, of course, its occupancy and use as a meeting place for those who honorably served their country in her time of need must necessarily increase the extent of the utility of the building as a means for the promotion and promulgation of patriotic principles and practices. To permit the men whose associations have been effected for the purpose of inculcating and promoting patriotism to use the vacant halls as a rendezvous for revivifying and broadcasting the spirit of patriotism throughout the length and breadth of the land is clearly a public and not a private purpose.

[3]  The means and methods of promoting a public purpose by legislative enactment are ordinarily for legislative determination. (*Veterans' Welfare Board* v. *Riley,* 188 Cal. 607 [206 Pac. 631].)  And the determination of the legislature to make the memorial hall in question a living force for the promulgation of patriotic principles by dedicating its use to associations created to foster the spirit of patriotism rather than leaving it a mere unoccupied inanimate tribute to the men who made the supreme sacrifice was certainly a wise and commendable exercise of legislative power.

[4]  We do not think that it is necessary that the proposed Victory Hall should be open to the public generally in order to bring its erection and maintenance within the meaning and designation of a public purpose. To permit the use of the hall by the people generally for general purposes would be to permit it to be used necessarily at times for something other than the promotion of patriotism. The obvious object of the use of the hall is to promote patriotism and when it has done that it has done all that is re-

quired. It is not necessary, nor, still keeping in mind the paramount purpose of its erection, desirable, that the scope of its use be enlarged to indefinite limits. The hall being dedicated to patriotic purposes it is but reasonable and right to say that in the promotion of that purpose its use and occupancy should be limited to those associations which are builded upon patriotism and perpetuated for the preachment of patriotism. Indeed, the legislature by its limitation of the use of the building to those who were joined as brothers in arms in defense of the nation conserves rather than detracts from the purpose for which it was erected.

[5] It is conceded that our veterans of every war are, as a whole, a reasonable classification, within the purview of the constitution, for legislation which has in view the conferring of benefits upon them. (*Veterans' Welfare Board* v. *Riley,* 189 Cal. 159 [208 Pac. 678] ; *Board of Directors* v. *Nye,* 8 Cal. App. 527, 538 [97 Pac. 208].) [6] It is, however, insisted that by the limitation of the use of the hall to *associations* of veterans a classification into a subclass has been made which is unreasonable and, therefore, falls within the inhibition of the constitution. It is said that such limitation confers special privileges upon veterans who are members of patriotic, fraternal, and benevolent associations, even though composed exclusively of veterans, to the extent that it excludes all other veterans who stand in the same relation to the purpose of the law but who do not happen to be a member of any of the enumerated associations. It is to be noted that the building is devoted to and to be used as a "meeting place" for the use of associations of veterans. The legislature undoubtedly had in mind that it was by the meeting together, the gathering, the coming together, and congregating of the veterans that the patriotic impulse would by that contact be revivified and radiated to the people at large. Having in mind this purpose there is a reasonable and substantial distinction existing for the dedication of the hall to the use of associations and not to the use of individual veterans. And in view of the fact that no minimum or maximum of membership is required of any veteran association which may use the hall and the fact that any number of veterans may associate themselves together, it follows that by the formation of small organizations practically the entire body of veterans may, if they desire, make themselves eligible to the benefits of the statute.

In the fact above stated lies the distinction between this case and the case of *Kingman* v. *City of Brockton*, 153 Mass. 255 [11 L. R. A. 123, 26 N. E. 998], relied upon by respondent in support of the contention that the restriction of the use of the building operates to defeat its public purpose.   Even if it were to be conceded that the situation in the case last referred to was not distinguishable from the situation presented here, still it must be borne in mind that the decision of one jurisdiction is not absolutely binding upon the courts of another jurisdiction and that it is ordinarily resorted to for its persuasive effect rather than for its controlling influence.   In the case above cited, the persuasive effect of the decision is weakened, if not entirely destroyed, by the fact that the limitation of the use was to an individual and particular post of the Grand Army of the Republic.   Obviously, such a stringent limitation of its use might well suffice to defeat the public nature of its purpose.

[7]   The contention that the entire plan and scheme of the statute is unconstitutional in that it involves a gift to any individual, municipal, or other corporation cannot be sustained.   The same principle which actuated this court in upholding the validity of the statute in the case of *Veterans' Welfare Board* v. *Jordan*, 189 Cal. 124, 146 [22 A. L. R. 1515, 208 Pac. 284], is applicable here.   That case, although dealing with another and different inhibition of the constitution, is, we think, particularly pertinent to the present situation, inasmuch as it involves the construction and application of analogous fundamental constitutional principles. In that case the court had under consideration the validity of a statute authorizing a bond issue to be used for the purchase and improvement of large tracts of land by the veterans' welfare board and the subdivision and resale of the same on long terms of credit to veterans.   The objection there was made that the statute authorizing the bond issue contravened the provision of the constitution prohibiting the giving or loaning of the credit of the state.   (Art. IV, sec. 31.)   Although it was held that the bond issue proposed would create a debt against the state when such bonds were issued, it was held that the statute was valid as authorizing the expenditure of public money for a public purpose.   In disposing of the objection the court said: "In view of the fact

that the money raised . . . is applied to a public purpose, it follows that the fact that incidentally there is a benefit derived by the purchaser from the credit of the state and that such purchaser is a veteran, should not render invalid such legislation. That is to say, where the transaction authorized by the statute on its face purports to be a purchase and sale of land and there is no loan of credit in the ordinary acceptation of such terms and where in substance and effect the legislation accomplishes a wholly different public purpose from the mere extension of credit, the law is not to be held unconstitutional as a violation of the substance and effect of the provision against lending or giving the credit of the state." It may be fairly said in the instant case that the benefit conferred is but incidental to the paramount purpose contemplated by the statute and is in and of itself inconsequential. The main object of the statute should not be circumvented and condemned because some mere incidental and inconsequential benefit may be derived from the operation of the statute. It is true that the Veterans' Bond Act of 1921 (Stats. 1921, p. 959), was held to be unconstitutional so far as it authorized the use of money from the sale of bonds in the farm and home purchasing scheme. (*Veterans' Welfare Board* v. *Jordan, supra.*) But this ruling resulted from the fact that the benefit to the individuals was a direct benefit because the homes and farms which by the terms of the act they were enabled to possess and occupy were to be put to a strictly private use, whereas in the instant case the possession, use, and occupation of the building will at all times be devoted to a strictly public use. As was said in *Veterans' Welfare Board* v. *Jordan, supra:* "The distinction . . . is perhaps not very great, but enough, we think, to require us to give the benefit of the doubt, if any, of the constitutionality of this scheme to the legislative determination of that matter."

But aside from this the granting of the use of the memorial hall cannot, we think, in any view which may be taken of the case, be said to fall within the inhibition of the constitution against the making of a gift of public money, or thing of value to any individual, municipal, or other corporation. A gift is defined by the Civil Code to be "a transfer of personal property, made voluntarily, and without consideration." (Sec. 1146, Civ. Code.) "A gift is some-

thing bestowed without return.'' (*Miller* v. *Dunn*, 72 Cal. 462, 474 [1 Am. St. Rep. 67, 14 Pac. 27].) ''To be a gift this voluntary transfer must be gratuitous—a handing over to the donee something for nothing.'' (*Yosemite Stage etc. Co.* v. *Dunn*, 83 Cal. 264 [23 Pac. 369].) The gift which the legislature is prohibited from making is not limited, of course, to a ''transfer of personal property'' as defined by section 1146 of the Civil Code, but includes all appropriations of public money for which there is no authority or enforceable claim, or which perchance may rest upon some moral or equitable obligation. (*Conlin* v. *Board of Supervisors*, 99 Cal. 17, 21 [37 Am. St. Rep. 17, 21 L. R. A. 474, 33 Pac. 753].) But a gift as implying a gratuity, that is, something for nothing, or as expressed in *Miller* v. *Dunn*, *supra*, ''something bestowed without return,'' is the ''gift'' meant by the constitution. It cannot, we think, be truthfully said that in the instant case there will be no return for the benefit conferred. While it is true that the return anticipated is incorporeal and intangible, it is nevertheless a very vital and valuable return to the state. The promotion and promulgation of patriotism upon which the state must rely for its own self-preservation is in truth and in fact a good consideration for the thing granted by the state and justifies the extending the bounty of the state.

There is no need to attempt to justify the loaning of the use of the building as payment for either a legal or a moral claim. The granting of the use of the building is not analogous to the direct payment of bonuses to persons who have served in past wars. The justification for the grant does not rest upon the moral or equitable obligation of payment to the veterans for services already rendered. In its dedication of the use of the building to associations of veterans the state is not looking toward the past but to the future. In short, it is not for past services rendered that the proposed building is dedicated to the use of those who served their country but for the services to be rendered by them to the state in the future by keeping alive and fostering that spirit of patriotism which actuated them when they offered their all, even unto ''the last full measure of devotion,'' for the perpetuation of the ideals and institutions for which this nation stands.

With reference to the hypothetical situation suggested that the building might perchance be used as the meeting place for associations composed entirely of veterans of other states and that no money of this state should be expended for any benefit which might possibly be shared by veterans who enlisted from other states, it is only necessary to say that the contingency suggested is so remote as to be practically negligible. Furthermore, the question of what organizations are eligible to use the building, being merely an administrative matter, the situation can be met when the problem arises—if it ever does arise. Patriotism involves not only a love for a particular state, but for the whole United States—the individual profit and glory of each state is, in a manner of speaking, the community property of the nation at large.

It follows from what has been said that the board of supervisors, acting in pursuance of section 4041f of the Political Code, is empowered to erect as a memorial hall the building to be known and designated as Victory Hall. Furthermore, it is empowered to limit the use of the hall to a meeting place for associations of veterans who have served the United States honorably in its wars. We do not, however, wish to be understood as holding that the legislature has not the power to enlarge the scope of the use of the hall to include kindred organizations or to open it to the public at large if future exigencies indicate that a wider use of the hall would enhance its usefulness and better subserve the public needs.

Let the writ issue as prayed for.

Wilbur, C. J., Kerrigan, J., Lawlor, J., Seawell, J., and Myers, J., concurred.