TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-302 |
| of | : | |
| | : | December 20, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MILTON MARKS, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. May a county rent space to a private, non-profit organization for the operation of a contemporary art museum in a building maintained by the county for use of a veterans' association, where the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building?

2. May a charter county revoke its dedication of a building for use of a veterans' association without substituting alternative facilities, where the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building?

CONCLUSIONS

1. A county may rent space to a private, non-profit organization for the operation of a contemporary art museum in a building maintained by the county for use of a veterans' association, even though the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building, provided that the use of the building as a museum is incidental to, consistent with, and does not unduly interfere with the reasonable use of the building by the veterans' association.

2.  A charter county may not revoke its dedication of a building for use of a veterans' association without substituting alternative facilities, where the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building.

ANALYSIS

Pursuant to the provisions of Military and Veterans Code section 1262,[1] the board of supervisors of a county may "provide, maintain or provide and maintain buildings, memorial halls, meeting places, memorial parks, or recreation centers for the use or benefit of one or more veterans' associations."  (See *Wall* v. *State of California* (1946) 73 Cal.App.2d 838, 840-841; 62 Ops.Cal.Atty.Gen. 655 (1979).)  The provision of such a facility pursuant to section 1262 and its acceptance by the veterans' association constitutes a dedication for such use and benefit.  (§ 1266.)

The two questions presented for consideration require an interpretation of section 1266.  Specifically, it must be determined whether space within a building dedicated for use of a veterans' association may be rented for the operation of a contemporary art museum and whether a charter county may revoke a dedication for such use without providing an alternative facility to the veterans' association in the absence of a violation, consent, or abandonment by the association.  Section 1266 provides:

"Whenever a county has provided, maintained, or provided and maintained any building, memorial hall, meeting place, memorial park, or recreation center for the use or benefit of one or more veterans' associations, pursuant to Section 1262, the provision of that facility and its acceptance by the veterans' association constitutes a dedication of that property to a public purpose, and the county may not revoke the dedication, so long as the veterans' association has not violated the terms and conditions of the dedication, unless it dedicates substitute facilities or unless the veterans' organization has either consented to the proposed county action or has abandoned its use of the facilities."

1.  Rental of Dedicated Space

In *Allied Architects' Assn.* v. *Payne* (1923) 192 Cal. 431, the Supreme Court held that the dedication of a building by a county for the exclusive use of a veterans' association did not violate the constitutional prohibition against the making of gifts of public funds.  After a lengthy analysis the court concluded:

"It follows from what has been said that the board of supervisors, acting in pursuance of section 4041f of the Political Code [now section 1262], is empowered to erect as a memorial hall the building to be known and designated as Victory Hall. Furthermore, it is empowered to limit the use of the hall to a meeting place for associations of veterans who have served the United States honorably in its wars.  We

---

[1] All section references herein are to the Military and Veterans Code.

do not, however, wish to be understood as holding that the legislature has not the power to enlarge the scope of the use of the hall to include kindred organizations or to open it to the public at large if future exigencies indicate that a wider use of the hall would enhance its usefulness and better subserve the public needs." (*Id.*, at p. 440.)

Six years later in *Gridley Camp No. 104* v. *Board of Supervisors* (1929) 98 Cal.App. 585, the Court of Appeal explained the *Payne* decision as follows:

"In behalf of the petitioners it is argued that the case of *Allied Architects' Association of Los Angeles* v. *Payne*, 192 Cal. 431, holds and adjudges that the Board of Supervisors, or the committee or custodian placed in charge of such building possesses no authority to permit the use thereof by any other than a veteran association. While there is language in the opinion in that case which is open to the construction that the author of the opinion entertained the idea that such buildings should properly be limited to the exclusive use of such organizations, and the case does hold that the Board of Supervisors may erect a building under the act which is devoted exclusively to the use of such organizations, the case does not go to the extent contended for by the petitioners. It is to be observed also that the case primarily was based upon a resolution of the Board of Supervisors of the county of Los Angeles, which specified that the building to be erected should be exclusively used as a meeting place for patriotic, fraternal and benevolent associations `whose membership shall be composed only of veterans,' etc.

"While we are of the opinion that under the section of the Political Code authorizing the construction of memorial buildings, boards of supervisors possess the authority and power to limit the use thereof and of every room therein, exclusively to veterans, it does not follow that the language should be so narrowly construed as to prevent the incidental use thereof or the incidental use of the rooms therein, such as the main auditorium, in such a manner as not to interfere with the main purposes for which the building has been erected, and at times when such rooms would otherwise be vacant. While the section of the code authorizes the construction of such buildings, in the nature of things and in the ordinary course of events associations of veterans of wars that are past will cease to be. This is peculiarly applicable to cities no larger than the town of Gridley and it would be carrying the idea further than we think the language of the act requires to hold that when the veteran associations referred to have ceased to be, the building must remain vacant or stand as an empty monument. The complaint in this case is directed particularly to the use permitted of the auditorium, but from the facts before us it is apparent that the auditorium having a seating capacity of 1200 is designed for use only on special occasions, and under such circumstances we see no reason why the Board of Supervisors or the committee placed by it in control of the building, should not allow the incidental use of the auditorium for purposes not inconsistent with the objects for which the building was erected, or which do not obstruct or interfere with the use of the building by the different veteran organizations, either free of charge or for a stated compensation, and thus aid in defraying the expenses of maintaining the building." (*Id.*, at pp. 591-592.)

On numerous occasions we have alluded to the issue of the incidental use of dedicated facilities. In 5 Ops.Cal.Atty.Gen. 155 (1945), for example, we concluded that a board of supervisors may allow the use of a veterans' memorial hall by a non-veterans organization, where such use is not specifically restricted and would not interfere with its use by veterans. Similarly, in 13 Ops.Cal.Atty.Gen. 56 (1949), respecting the use of such a facility in Imperial County, we stated in part:

> ". . . We think, therefore, that the construction should be that where a veterans' association is given the use of the building for a regular meeting place or recreation center, such organization must be composed solely of veterans, but that this should not prohibit the supervisors from permitting the use of such buildings or parts thereof for other purposes incidental to the main purpose by the State and Federal Governments if the board, in the exercise of a sound discretion, determines that such use will not interfere with the main use or purpose for which such buildings were constructed." (*Id.*, at p. 60; see also 16 Ops.Cal.Atty.Gen. 64 (1950).)

In 1955 the Legislature essentially codified the *Gridley* decision by enacting section 1264. (Stats. 1955, ch. 1604, § 1.) Section 1264 provides:

> "The governing body maintaining any facilities constructed or maintained pursuant to this chapter may provide for the use of such facilities by persons or organizations other than veterans, either free of charge or for stated compensation to aid in defraying the cost of maintenance, for any purpose not inconsistent with the continued use pursuant to this chapter, when such use will not unduly interfere with the reasonable use of the facilities by veterans' associations."

In 1989, however, the Legislature enacted section 1266, as set forth at the outset. (Stats. 1989, ch. 102, § 1.) Section 1266 speaks of the provision by a county of a facility and its acceptance by a veterans' association as a "dedication" to a public purpose. Does such terminology affect or modify in any respect the right of a board of supervisors under the terms of section 1264 to provide for the use of a dedicated facility by persons other than veterans?

In our view neither the term "dedication" nor the language of section 1266 as a whole has any such effect. First, section 1266 pertains specifically to the revocation of a dedication, as distinguished from a county's authority to allow consistent uses of a dedicated facility. Second, the words of a statute must be construed in context, keeping in mind the statutory purpose, and statutes or sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268; 78 Ops.Cal.Atty.Gen. 253, 260 (1995); 78 Ops.Cal.Atty.Gen. 247, 251 (1995).) We may assume that had the Legislature intended to modify the meaning of section 1264 and the longstanding judicial precedent embodied therein, it would have amended that section so as to conform with such intention. (Cf. 78 Ops.Cal.Atty.Gen., *supra*, at 260; 75 Ops.Cal.Atty.Gen. 256, 260 (1992).) Third, the Legislature, at the time of the enactment of section 1266, expressly stated in an uncodified provision: "It is the intent of the Legislature, in enacting Section 1266 of the Military and Veterans Code, to codify the holding of the court in the case of Gridley Camp No. 104 v. Board of Supervisors, 98 Cal.App.

585." (Stats. 1989, ch. 102, § 2.)  The grant of authority contained in section 1264 thus remains unchanged by the enactment of section 1266.

Accordingly, it is concluded that a county may rent space to a private, non-profit organization for the operation of a contemporary art museum in a building maintained by the county for the use of a veterans' association, even though the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building, provided that the use as a museum is incidental to, consistent with, and does not unduly interfere with the reasonable use of the building by the veterans' association.

2.  Revocation of Dedication

The second inquiry concerns a charter county's revocation of the dedication for use of a county building by a veterans' association.  Section 1266 prescribes the conditions under which a dedication may be revoked where the veterans' association has not violated the terms and conditions of the dedication, has not consented to the revocation, and has not abandoned its use of the facility.  The principal obligation of the county under these circumstances would be to dedicate a substitute facility.[2]

The question remains, however, whether the requirements of sections 1262-1266 are applicable to a charter county.  Does having a charter mean that a county need not follow the Legislature's statutory requirements?  The scope of authority reserved to a county by charter is more restricted than in the case of charter cities.    (64 Ops.Cal.Atty.Gen. 234, 237-238 (1981); 61 Ops.Cal.Atty.Gen. 31, 33 (1978).)  Specifically, the rule with respect to a charter county is that its legislation may supersede conflicting state law only as to those matters which are actually contained in the charter pursuant to express constitutional authorization.  (Cal. Const., art. XI, §§ 3, 4; 67 Ops.Cal.Atty.Gen. 402, 403-404 (1984); 61 Ops.Cal.Atty.Gen. 512, 519 (1978).)   Here no such express authorization may be found in the Constitution.

Further, with respect to matters of statewide concern, county charters are always subordinate to general laws.  (*Shean* v. *Edmunds* (1948) 89 Cal.App.2d 315; 61 Ops.Cal.Atty.Gen., *supra*, at 33-34.)  We entertain no doubt that the establishment and maintenance of facilities for veterans' associations throughout California are matters of statewide interest.  The welfare of veterans and the promotion of patriotism are not peculiarly incidental to any particular local concern.  On the contrary, the broader public purposes of veterans' associations were clearly envisioned by the Supreme Court in *Allied Architects' Assn.* v. *Payne*, *supra*, 192 Cal. at 434-435:

> "It is settled beyond question that the promotion of patriotism, involving as it does the sense of self-preservation, is not only a public purpose but the most elemental of public purposes.  [Citations.]  The continuity of our governmental institutions is dependent in a large measure upon the perpetuation of a patriotic impulse which is but

---

[2] We have previously determined that a dedication may, in the event of a substantial abandonment, be withdrawn without the necessity of dedicating a substitute facility.  (20 Ops.Cal.Atty.Gen. 199 (1952).)

the willingness to sacrifice all for the ideas and the ideals which form the foundation stones of our republic . . . . It is conceded, as indeed it must be, that the erection of a building as a memorial hall, to the extent that it would serve as a stimulus to patriotism, would be for a public purpose. [Citations.]

". . . To permit the men whose associations have been effected for the purpose of inculcating and promoting patriotism to use the vacant halls as a rendezvous for revivifying and broadcasting the spirit of patriotism throughout the length and breadth of the land is clearly a public . . . purpose.

". . . And the determination of the legislature to make the memorial hall in question a living force for the promulgation of patriotic principles by dedicating its use to associations created to foster the spirit of patriotism . . . was certainly a wise and commendable exercise of legislative power."

Inasmuch as the power to establish and maintain a building for the use and benefit of a veterans' association is not expressly included in the Constitution among those which may be contained in a county charter and is further a matter of statewide concern, the terms and requirements of sections 1262-1266 govern charter counties. (Cal. Const., art. XI, § 1, subd. (b).)[3]

It is concluded that a charter county may not revoke its dedication of a building for use of a veterans' association without substituting alternative facilities, where the veterans' association has not violated the terms or conditions of the county's dedication for such use, has not consented to the revocation of the dedication for such use, and has not abandoned its use of the building.

\* \* \* \* \*

---

[3] A charter city and county has the same authority with respect to municipal affairs as does a charter city. (Cal. Const., art. XI, § 6; *West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 520-522; 61 Ops.Cal.Atty.Gen., *supra*, at 518, fn. 6.) Nevertheless, the same result would ensue for purposes of this inquiry. Where a charter city legislates with respect to municipal affairs, its charter prevails over the general laws. (Cal. Const., art. XI, § 5, subd. (a).) As to matters of statewide concern, however, charter cities remain subject to state law. (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 397-400; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 16-18; 78 Ops.Cal.Atty.Gen. 143, 148-150 (1995).)