Filed 2/26/26  S.O. v. Bonita Unified School District CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| S.O., | B339440 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 22STCV08077 |
| v. | |
| BONITA UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court, Los Angeles County, Christian R. Gullon, Judge.  Reversed.

Herman Law, Allegra P. Rineer and Osvaldo Rocha for Plaintiff and Appellant.

McCune & Harber, Stephen M. Harber and George D. Tourkow for Defendant and Respondent.

In 2019, the Legislature enacted Assembly Bill No. 218 (2019–2020 Reg. Sess.). (Stats. 2019, ch. 861, § 1.) The bill opened a three-year window (starting on January 1, 2020) within which plaintiffs could bring childhood sexual assault claims against public entities that would otherwise be barred because of statutes of limitations or the claim presentation requirement of the Government Claims Act (Gov. Code, § 810 et seq.). (See *West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243, 1252 (*West Contra Costa*); Gov. Code, §§ 905, 911.2, 945.4.) The legislation also amended the Government Claims Act to exempt retroactively all claims based on childhood sexual assault from the claim presentation requirement. (See *West Contra Costa,* at p. 1254; Gov. Code, § 905, subds. (m) & (p).) Plaintiff relied on Assembly Bill No. 218 "to 'revive' " his claims alleging sexual abuse by an employee of defendant Bonita Unified School District (the District) that occurred in 1977 when he was 10 years old.

We join the unanimous consensus of our colleagues in holding Assembly Bill No. 218's retroactive waiver of the claim presentation requirement does not violate the gift clause of the California Constitution (Cal. Const., art. XVI, § 6). (See *West Contra Costa, supra,* 103 Cal.App.5th at pp. 1252, 1257–1264; *O.B. v. Los Angeles Unified School Dist.* (2025) 113 Cal.App.5th 930, 933 (*O.B.*); *R.L. v. Merced City School Dist.* (2025) 114 Cal.App.5th 89, 98 (*R.L.*).) Because the trial court reached a contrary conclusion in granting the District's motion for judgment on the pleadings, we reverse.[1]

---

[1] *West Contra Costa, O.B.,* and *R.L.* all were decided after the trial court entered judgment in this case.

## BACKGROUND

On March 4, 2022, plaintiff filed this action against the District. He alleges that, in 1977, when he was 10 years old and a student at an elementary school within the District, he was repeatedly sexually abused by a District employee on school grounds. Although he reported the abuse to the school's vice principal, the District did nothing to stop it, and the abuse continued for approximately one year. Based on these allegations, the operative complaint asserts causes of action for negligence and negligent hiring, retention, and supervision against the District. Because the employee's alleged conduct constituted " 'childhood sexual assault' as defined in California Code of Civil Procedure section 340.1," the pleading states it is "exempt from the claims presentation requirement set forth in the [Government] Claims Act," as amended by Assembly Bill No. 218. (See Gov. Code, § 905, subd. (m).)

The District moved for judgment on the pleadings, arguing Assembly Bill No. 218 violates the gift clause of our state constitution to the extent the legislation "purports to retroactively strip statutory governmental immunity from public entities." At the time of the alleged misconduct in 1977, the Government Claims Act required plaintiff to present his claim to the District no later than 100 days after the cause of action accrued. (See *R.L., supra,* 114 Cal.App.5th at p. 105, citing former Gov. Code, § 911.2, added by Stats. 1963, ch. 1715, § 1, pp. 3372–3376.) Because Assembly Bill No. 218 retroactively waived the claim presentation requirement that otherwise barred plaintiff's claim, the District argued the legislation unconstitutionally created a new monetary liability against a public entity in violation of the gift clause.

The trial court granted the motion. Because timely claim presentation is a "*substantive* element of [a] claim" against a public entity under the Government Claims Act, the court reasoned Assembly Bill No. 218 effectively created "liability on public entities for past conduct where no enforceable claim existed" before the legislation. In creating this liability, the court concluded Assembly Bill No. 218 violated the gift clause.

The court entered judgment against plaintiff. This appeal followed.

## DISCUSSION

### 1. *Relevant Statutes and Legal Principles*

This case presents an issue of statutory and constitutional interpretation arising at the intersection of the Government Claims Act, the statute governing childhood sexual assault claims, and the gift clause of our state constitution. Our review is de novo. (See *O.B., supra,* 113 Cal.App.5th at p. 935.)

### a. *The claim presentation requirement under the Government Claims Act*

"Enacted in 1963, the Government Claims Act . . . is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts. [Citation.] For many decades before the Act, tort liability for public entity defendants was barred by a common law rule of governmental immunity. Over time, however, the common law rule became 'riddled with exceptions,' both legislative and judge made, and in 1961 [the California Supreme Court] abolished the rule altogether." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).) In response, the Legislature enacted the Government Claims Act, which eliminated common law tort liability for public entities by mandating that "such

4

liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897; see Gov. Code, § 815, subd. (a) ["Except as otherwise provided by statute: [¶] A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."]; *Quigley*, at p. 803; *R.L., supra,* 114 Cal.App.5th at p. 104.) The Act provides several statutory grounds for public entity tort liability, including, as relevant here, for injuries "proximately caused by an act or omission of an employee of the public entity within the scope of his employment." (Gov. Code, § 815.2, subd. (a).)

Under the Government Claims Act, almost " 'all claims for money or damages against local public entities' [must] be presented to the responsible public entity before a lawsuit is filed." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, fn. omitted (*Stockton*), quoting Gov. Code, § 905; *R.L., supra,* 114 Cal.App.5th at p. 105.) Before 1988, "[a] claim relating to a cause of action for death or for injury to [a] person" had to be presented "not later than the 100th day after the accrual of the cause of action." (Former Gov. Code, § 911.2, added by Stats. 1963, ch. 1715, § 1, pp. 3372–3376; cf. Gov. Code, § 911.2, subd. (a) [claim must be presented "not later than six months after the accrual of the cause of action"]; see *R.L.,* at p. 105.)

" 'The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an *element* that a plaintiff is required to prove in order to prevail.' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 (*DiCampli*); Gov. Code, § 945.4; accord, *Stockton, supra,* 42 Cal.4th at p. 734; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1240, 1244.) However,

5

"the claim[ ] presentation provisions do not impose substantive liability; some other statute must be found that imposes liability." (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 905.8, p. 368; see Gov. Code, § 905.8 ["Nothing in this part imposes liability upon a public entity unless such liability otherwise exists."].)  Instead, the claim presentation requirement's purpose is " ' "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] . . ." . . . The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." ' " (*DiCampli,* at p. 991.) The claim presentation requirement " 'is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' " (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 908.)

> b. *Code of Civil Procedure section 340.1 and Assembly Bill No. 218*

"Code of Civil Procedure Section 340.1 is, for the most part, a statute of limitations" for claims of childhood sexual abuse or assault.  (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 777.)  Our high court has described " 'the intent that illuminates' " the statute "as an aim 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' " (*Ibid.,* quoting *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 536.) "Since its original enactment in 1986 [citation], the statute has

6

been amended on multiple occasions to extend the filing periods for claims alleging childhood sexual assault and revive otherwise time-barred claims." (*Los Angeles Unified,* at p. 777.) "One such amendment occurred through the enactment of Assembly Bill No. 218." (*Ibid.*) "This revision made several changes to Code of Civil Procedure section 340.1. Among these adjustments, Assembly Bill No. 218 extended the time for filing claims for childhood sexual assault (Code Civ. Proc., § 340.1, subds. (a), (c)) and created a revival window for lapsed claims (*id.*, subd. (q)), which included relief from the claim presentation deadlines within the Government Claims Act." (*Ibid.*)

As relevant to this case, Assembly Bill No. 218 revived claims for childhood sexual assault, regardless of when the abuse allegedly took place, for a three-year period that expired December 31, 2022. (*West Contra Costa, supra,* 103 Cal.App.5th at p. 1254, citing former Code Civ. Proc., § 340.1, subd. (q).)[2] The legislation "expressly revived claims 'that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, *claim presentation deadline*, or any other time limit had expired.'" (*West Contra Costa,* at p. 1254, quoting former Code Civ. Proc., § 340.1, subd. (q).) Prior to the enactment

---

[2] "Effective January 1, 2024, the Legislature enacted section 340.11, which now governs claims for childhood sexual assault that occurred before January 1, 2024. (Stats. 2023, ch. 877, § 1, eff. Jan. 1, 2024.) The revival provision at issue in the present case is currently located in section 340.11, subdivision (q). The current version of section 340.1 applies to any claim in which the childhood sexual assault occurred on or after January 1, 2024. (§ 340.1, subd. (p).)" (*West Contra Costa, supra,* 103 Cal.App.5th at p. 1253, fn. 4.)

of Assembly Bill No. 218, "[former] Government Code . . . section 905, subdivision (m), exempted from the claim presentation requirement '[c]laims made pursuant to Section 340.1 . . . for the recovery of damages suffered as a result of childhood sexual abuse' with one significant limitation: '[t]his subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009.' " (*West Contra Costa,* at p. 1254.) Assembly Bill No. 218 removed this limitation, and Government Code section 905, subdivision (m) now exempts all claims based on childhood sexual assault from the claim presentation requirement. (See *West Contra Costa,* at p. 1254; Gov. Code, § 905, subd. (m) ["There shall be presented . . . all claims for money or damages against local public entities *except* any of the following: [¶] . . . [¶] Claims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual assault." (Italics added.)].)

        c.     *The gift clause of the California Constitution*

        Under article XVI, section 6 of the California Constitution, "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual." (See *Chapman v. State* (1894) 104 Cal. 690, 693 (*Chapman*), citing Cal. Const., former art. IV, § 31.) "Although the term 'gift' is statutorily defined as 'a transfer of personal property, made voluntarily, and without consideration' (Civ. Code, § 1146), 'the gift the Constitution prohibits is not limited to personal property, "but includes all appropriations of public money for which there is no authority or enforceable claim, or which perchance may rest upon some moral or equitable obligation." ' " (*R.L., supra,* 114 Cal.App.5th at p. 107; see *Allied Architects' Ass'n v. Payne* (1923) 192 Cal. 431, 438–439.) "The

8

Legislature cannot ' "create a liability against the state for any past acts of negligence on the part of its officers, agents or employees" ' because to do so ' "would, in effect, be the making of a gift." ' " (*O.B., supra,* 113 Cal.App.5th at p. 937, quoting *Heron v. Riley* (1930) 209 Cal. 507, 517 (*Heron*); see also *Conlin v. Board of Supervisors* (1893) 99 Cal. 17, 22 (*Conlin*) ["An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift" under the constitution.].)

        d.     *Public entity liability for childhood sexual abuse under the Government Claims Act*

Under the Government Claims Act, a public entity is "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." (Gov. Code, § 815.2, subd. (a); see *id.,* § 820, subd. (a) ["a public employee is liable for injury caused by his act or omission to the same extent as a private person"]; *West Contra Costa, supra,* 103 Cal.App.5th at p. 1260; *O.B., supra,* 113 Cal.App.5th at p. 937.) While the statute does not make a school district liable for sexual abuse perpetrated by an employee, as " 'such conduct is not within the scope of employment,' " the district " 'may be held liable if its supervisory employees were negligent in hiring and supervising the abusive teacher and that negligence resulted in the student's harm.' " (*O.B.*, at p. 937, citing *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 875 (*C.A.*) [allegations that "the [School] District's administrators and employees knew or should have known of [the head guidance counselor]'s dangerous propensities, but nevertheless hired,

retained and failed to properly supervise her . . . could make the District liable under a vicarious liability theory encompassed by [Government Code] section 815.2"].)  This was the law in 1977 when the alleged sexual abuse occurred, and it remains the law today.  (See *West Contra Costa,* at p. 1260.)

The District does not dispute that, under Government Code section 815.2, it could have been subject to liability for the conduct alleged in plaintiff's operative pleading.  It maintains, however, that any such liability was extinguished in 1977, when plaintiff failed to present a timely claim as then required under the Government Claims Act.  On that basis, the District contends Assembly Bill No. 218 violates the constitutional prohibition against gifts of public funds by retroactively reviving a claim long since barred.  We turn to this contention now.

2.      ***Assembly Bill No. 218 Does Not Create a New Liability or Cause of Action in Violation of the Constitution's Gift Clause***

The parties agree our Supreme Court's decision in *Chapman* is the "appropriate lens" through which to evaluate the District's gift clause claim.  (*West Contra Costa, supra,* 103 Cal.App.5th at p. 1257, citing *Chapman, supra,* 104 Cal. 690; accord, *O.B., supra,* 113 Cal.App.5th at pp. 938–940; *R.L., supra,* 114 Cal.App.5th at pp. 111, 115–116.)

In August 1891, the plaintiff's assignors in *Chapman* paid the State of California to store coal on a public wharf.  (*Chapman, supra,* 104 Cal. at p. 692.)  The wharf collapsed due to the state's and its agents' alleged negligence, and the coal was lost.  (*Ibid*.)  The plaintiff presented his claim to the state board of examiners, which rejected it.  (*Ibid*.)  Then, in February 1893—more than a year after the wharf collapse—the Legislature enacted a statute

10

authorizing all persons " 'who have, or shall hereafter have, claims on contract or for negligence against the state, not allowed by the state board of examiners, . . . to bring suit thereon against the state in any of the courts of this state of competent jurisdiction.' " (*Id*. at p. 693.)  The plaintiff sued under the new statute.  The state demurred, arguing it "was not liable for the damage" at the time of the loss and the statute "should not be construed as intended to create any liability against the state for such past negligence." (*Ibid*.)  The trial court sustained the demurrer, and the plaintiff appealed.  (*Id*. at pp. 691–692.)

The *Chapman* court reversed.  (*Chapman*, *supra*, 104 Cal. at p. 697.)  While the court recognized the plaintiff could not recover on a negligence claim because "the state [was] not liable in damages for the negligent acts of its officers," it concluded the action was "not founded upon negligence constituting a tort, pure and simple," but instead, was "substantially" based on "the alleged breach of a contract" and, at the time of the loss, the law was "well expressed" that "a state is bound by the same rules as an individual in measuring its liability on a contract." (*Id*. at pp. 693–694.)  Thus, although the Legislature had "no power" under the gift clause "to *create* a liability against the state for any such past act of negligence" (*id*. at p. 693, citing Cal. Const., former art. IV, § 31), the plaintiff's claim was nonetheless viable because "the liability of the state *accrued at the time of its [contractual] breach*; that is, when the coal was lost through the negligence of the officers in charge of the state's wharf, *although there was then no law giving to the plaintiff's assignors the right to sue the state therefor*." (*Chapman,* at p. 696, italics added.)  This distinction made a difference with respect to the gift clause, as our Supreme Court explained:

11

"At th[e] time [of the state's breach] the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance . . . ; but the right to sue the state has since been given by the act of February 28, 1893, and *in so far as that act gives the right to sue the state upon its contracts, the [L]egislature did not create any liability or cause of action against the state where none existed before.* The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and *it is not, even as applied to prior contracts, in conflict with any provision of the constitution.* [¶] *'The fact that the state is not subject to an action [o]n behalf of a citizen does not establish* that he has no claim against the state, or *that no liability exists from the state to him.* It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. What is made out by this objection *is not that there is no liability* and no claim, but that there is no remedy.' " (*Ibid.*, italics added.)

As *Chapman* teaches, the gift clause prohibits the Legislature from "creat[ing] any liability or cause of action against the state where none existed before." (*Chapman, supra,* 104 Cal. at p. 696; accord, *Heron, supra,* 209 Cal. at p. 517; *Conlin, supra,* 99 Cal. at p. 22; see *R.L., supra,* 114 Cal.App.5th

at p. 111; *West Contra Costa, supra,* 103 Cal.App.5th at p. 1259; *O.B., supra,* 113 Cal.App.5th at p. 939.) Thus, "[i]n assessing whether legislation improperly permits a plaintiff to sue a defendant on the basis of a new liability or cause of action, the essential question—as framed by our Supreme Court—is whether the defendant's alleged acts or omissions violated a duty or obligation imposed by preexisting law." (*R.L.,* at p. 111, citing *Chapman,* at pp. 693–696.) "Where this question is answered in the affirmative, no new liability or cause of action has been created by ensuing legislation," and the gift clause is not violated. (*R.L.,* at p. 111; accord, *West Contra Costa,* at p. 1259; *O.B.,* at pp. 939–940.)

The District contends Assembly Bill No. 218 violates the gift clause, as construed in *Chapman*, because (a) compliance with the claim presentation requirement was "the only way a government entity waived immunity in 1977" when the alleged sexual abuse occurred, and (b) by "retroactively" eliminating this requirement, the legislation effectively created a new liability that the District had been immune from before the law's enactment. Along these same lines, the District emphasizes compliance with the claim presentation requirement was "a 'substantive' element of plaintiff's claim" in 1977, and, by retroactively abrogating it, Assembly Bill No. 218 "created a right to sue that never previously existed." In view of these "well settled rules that a government claim must be submitted to waive a public entity's sovereign immunity from liability and that this requirement is a substantive element of any cause of action against a public entity," the District argues the legislation contravenes the gift clause by "creat[ing] new liability for otherwise invalid claims." We disagree.

13

The District's contention rests on the erroneous premise that the claim presentation requirement bears on a public entity's "substantive" as opposed to "procedural" immunity under the Government Claims Act. (*R.L., supra,* 114 Cal.App.5th at pp. 113–114.) As explained in *R.L.*, " '[a]t common law, the doctrine of sovereign immunity had two strands: a *procedural immunity from suit* without the government's consent and a *substantive immunity from liability* for the conduct of government.' " (*Id.* at pp. 112–113, italics added, quoting *Quigley, supra,* 7 Cal.5th at p. 811.) "Starting in the late 19th century, the state 'would disentangle the two strands of sovereign immunity' [citation] by passing statutes 'granting legislative *consent to suit*' "—i.e., waiving the state's procedural immunity. (*R.L.*, at p. 113, italics added, quoting *Quigley*, at p. 812.) One of these statutes was the legislation at issue in *Chapman*, which "eliminated the state's *procedural* immunity to suit, thus opening the courts to the adjudication of the specified claims." (*Quigley,* at p. 811, italics added, citing *Denning v. State* (1899) 123 Cal. 316, 319 [discussing February 1893 act at issue in *Chapman*]; see *Chapman, supra,* 104 Cal. at p. 693; *R.L.,* at p. 113.)

"Under the law existing at the time of the Government Claims Act's enactment, a claim presentation requirement was viewed as the mechanism by which the state *consents to be sued*, i.e., waives *procedural* immunity." (*R.L., supra,* 114 Cal.App.5th at p. 113, italics added; see *Quigley, supra,* 7 Cal.5th at p. 811.) Consistent with this understanding, the Act's statutory text provides that "*no suit* for money or damages *may be brought* against a public entity" (Gov. Code, § 945.4, italics added) unless a timely claim is presented "*after the accrual* of the cause of

14

action" (*id.*, § 911.2, subd. (a), italics added). "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent '*liability arises*.' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397, italics added (*Norgart*); *R.L.,* at pp. 114–115.) Because a claim cannot be presented until "after the accrual of the cause of action" (Gov. Code, § 911.2. subd. (a)), the public entity's *liability* necessarily exists *before* the obligation to present the claim arises. (See *R.L.,* at p. 115 ["Since a claim must ' "fairly describe what [the] entity is alleged to have done" ' [citation], it cannot be presented prematurely, i.e., before liability under the substantive law is established."]; accord *West Contra Costa, supra,* 103 Cal.App.5th at pp. 1259–1260.) The claim presentation requirement thus operates as a mechanism for waiving the public entity's *procedural* immunity, allowing it to be sued on a *preexisting liability*, such as that created by Government Code section 815.2 for a public entity's negligent failure to protect a child from sexual assault by an employee. (See *O.B.*, *supra*, 113 Cal.App.5th at pp. 937–938, citing *C.A., supra,* 53 Cal.4th at p. 875; see also *Quigley,* at p. 811.)

Critically, under *Chapman*, a public entity's procedural immunity has no bearing on whether legislation violates the gift clause. It made no difference in *Chapman* that "there was then no law" authorizing the plaintiff "to sue the state" when the wharf collapsed, because "the *liability* of the state [had] *accrued* at the time of its breach" of contract. (*Chapman, supra,* 104 Cal. at p. 696, italics added.) Thus, when "the right to sue the state [was] given by the act of February 28, 1893," our Supreme Court held this waiver of procedural immunity was "not, even as

15

applied to prior contracts, in conflict with any provision of the constitution." (*Ibid*.) As the court put it, " '[t]he fact that the state [was] not subject to an action' "—i.e., that it was procedurally immune from suit—did " 'not establish that [the plaintiff] ha[d] no claim against the state, or that no liability exist[ed] from the state to him.' " (*Ibid*.) Because the legislation did not create "any liability or cause of action against the state where none existed before," but only waived the state's procedural immunity by "giv[ing] the right to sue the state," our high court held the gift clause was not violated. (*Ibid*.)

The District emphasizes that plaintiff failed to present a timely claim, which was " 'a condition precedent to the maintenance of any cause of action against the public entity' " and " 'an *element*' " that plaintiff was required to prove to overcome the District's *procedural* immunity. (*DiCampli, supra,* 55 Cal.4th at p. 990; *Quigley, supra,* 7 Cal.5th at p. 811; *R.L., supra,* 114 Cal.App.5th at pp. 113–114 & fn. 10.) As we have explained, however, procedural immunity has no bearing on the gift clause analysis under *Chapman*. When the obligation to present the claim arose, the District's liability under Government Code section 815.2—like the state's liability for breach of contract in *Chapman*—had already accrued upon the District's alleged negligent failure to protect plaintiff from sexual abuse.[3] (See

---

[3] To the extent it argues we must focus on the "*negligence*, not contract, analysis" from *Chapman* because Assembly Bill No. 218 "does not involve contract rights," the District simply misapprehends why *Chapman* is controlling. As the *O.B.* court explained in rejecting a nearly identical argument, "the significance of *Chapman* is not whether the state's liability to the plaintiff's assignors sounded in negligence or contract," but rather that "the liability sued upon existed before the

16

*O.B., supra,* 113 Cal.App.5th at p. 937, citing *C.A., supra,* 53 Cal.4th at p. 875; Gov. Code, § 911.2, subd. (a) ["A claim relating to a cause of action . . . for injury to person . . . shall be presented . . . after the accrual of the cause of action."]; *Norgart, supra,* 21 Cal.4th at p. 397 ["accrual of a cause of action" occurs " 'when, under the substantive law, the wrongful act is done,' . . . and the consequent 'liability arises' "]; see also *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 210 ["a cause of action for childhood sexual molestation accrues at the time of molestation"]; *Chapman, supra,* 104 Cal. at p. 696 ["the liability of the state accrued at the time of its breach"].)

When the Legislature enacted Assembly Bill No. 218, the District was already liable for its alleged negligence or negligent hiring, supervision, or retention of the employee who allegedly assaulted plaintiff. Like the February 1893 act in *Chapman*, Assembly Bill No. 218 did not create a new liability against the District—it simply waived the public entity's procedural immunity by "remov[ing] an obstacle to recovery imposed by the state as a condition of its consent to suit." (*West Contra*

Legislature's act giving the plaintiff the right to sue to enforce the liability." (*O.B., supra,* 113 Cal.App.5th at p. 939.) In *Chapman*, the liability sued upon was the state's liability for breach of contract, which existed before the February 1893 legislation gave the plaintiff the right to sue. (*Chapman, supra,* 104 Cal. at p. 696; *O.B.,* at p. 939.) Similarly, when the alleged sexual abuse occurred in this case, Government Code section 815.2, subdivision (a) made the District liable for its employees' negligence in failing to protect plaintiff from abuse. (See *O.B.,* at p. 937, citing *C.A., supra,* 53 Cal.4th at p. 875.) That liability —like the state's liability for breach of contract in *Chapman*— already existed when the Legislature enacted the new legislation. (See *O.B.,* at pp. 939–940.)

*Costa, supra,* 103 Cal.App.5th at p. 1263; see *Chapman, supra,* 104 Cal. at p. 696.)  We join the unanimous consensus of our colleagues in holding Assembly Bill No. 218's retroactive waiver of the claim presentation requirement does not violate the gift clause of our state constitution.  (*West Contra Costa,* at pp. 1263–1264; *O.B., supra,* 113 Cal.App.5th at p. 942; *R.L., supra,* 114 Cal.App.5th at p. 116.)

## DISPOSITION

The order granting the motion for judgment on the pleadings is vacated and the judgment is reversed.  Plaintiff S.O. is entitled to costs.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS




EGERTON, J.


We concur:




EDMON, P. J.




HANASONO, J.