[Civ. No. 3823.   Third Appellate District.—April 29, 1929.]

CAPTAIN CHARLES V. GRIDLEY CAMP No. 104, UNITED SPANISH WAR VETERANS, Petitioners, v. BOARD OF SUPERVISORS OF BUTTE COUNTY et al., Respondents.

586

King & King for Petitioners.

Seth Millington and Bond & Dierup for Respondents.

PLUMMER, J.—This cause is before us upon an original application for a writ of mandate by the above-named petitioners praying for an order of this court, directed to the respondents, commanding them to admit the petitioners to the use and occupation of a certain memorial building situate at Gridley, in the county of Butte.

The record before us shows that the county of Butte has erected four memorial buildings for the use of patriotic associations, one of said buildings being located in each of the following cities: Oroville, Chico, Paradise and Gridley. The record further shows that prior to the erection of any of said buildings the Board of Supervisors of Butte County was petitioned to do so by the representatives of the various organizations of veterans of said county; that said organizations represented to the Board of Supervisors that if said memorial buildings were constructed at the expense of the county, that they would be so conducted and managed that there would be no charge against said county or the taxpayers thereof for the maintenance and care of the same; that each of said buildings would be self-sustaining and the county would not be looked to for any financial assistance on account thereof; that for some time after the erection of the memorial building at Gridley it was occupied and used only by South Butte Post No. 210, American Legion. The association or organization known as Captain Charles V. Gridley Camp No. 104, United Spanish War Veterans, was organized after the erection of the building just referred to. The memorial building at Gridley was completed in the year 1927 and dedicated on the third day of May of that

year. The record shows that after the erection and dedication of said building the Board of Supervisors appointed a committee of ex-service men and a supervisor to manage and control the respective buildings, one member of the Board of Supervisors from the district in which one of the memorial buildings was situate being a member of that committee, for the purpose of controlling and looking after the building situate in the district represented on the Board of Supervisors. After its appointment the committee took charge of the respective buildings referred to, and during the year 1928 adopted the schedule of charges for the use and occupation of different rooms in the memorial buildings, based upon the expense of lighting, heating and janitor service, so calculated and adjusted that each organization or society using any particular room in any particular building would pay a sufficient sum to cover the actual expense attendant upon such use. Thus, for the main auditorium for afternoon meetings the schedule called for a payment of $15; for evening meetings, up to midnight, $15; after midnight, an additional $5 per hour. This schedule was for the portion of the year beginning with April 1st and ending with September 30th, and for the period of time between October 1st and March 31st the charge for the main auditorium was $25 both for afternoon and evening meetings. For clubrooms, afternoon meetings, $7.50; evening meetings, $10; banquet-room and kitchen, $7.50; for meetings of veteran societies and their auxiliaries where the hall used by such associations was regularly used for evening meetings, $2.50; after midnight, an additional charge of $1.50. The building at Gridley, according to the record and stipulation of counsel, consisted of a main auditorium capable of accommodating 1200 people; two rooms called club-rooms, for want of a better designation, capable of accommodating about 100 persons each, a banquet-room and kitchen. These rooms were used for the regular meetings of the different organizations, the main auditorium being used only for special purposes, such as public installations, public funerals, dances and public entertainments, the banquet-room and kitchen being used when banquets were being given.

Under the management of the committee to which we have referred different rooms in the building, including the main auditorium, have been rented to other societies than those

composed of veterans, for entertainments and kindred purposes. For this use compensation has been made based upon a schedule of charges calculated to make the building self-sustaining.

After the organization of the petitioners herein, one of the rooms heretofore called a club-room, but in fact a meeting-room for organizations such as the petitioners, was used by them as a meeting place. The petitioners' organization consisting of about thirty members, continued to occupy and use one of the meeting-rooms from the date of its organization until on or about the month of October, 1928. During that time it appears that the petitioners held a public function, entertainment and dance in the main auditorium, using the same from about 1 o'clock one afternoon until 2 o'clock the following night, or, rather, the following morning, and in so doing consumed, in heating and lighting of main auditorium, electric current to the value of $47.50, and also otherwise used electric current aggregating in all the value of $160. The petitioners declining to pay said electric bill, or any portion thereof, were requested to give up their key to the building, and have so done. This action seeks a judgment restoring the petitioners to the use of said building, and declaring their right to use and occupy the same without payment of any charge therefor. The contention of respondents is that the act under which the building was constructed permits a reasonable charge for the use and occupation thereof. The petitioners also pray for an injunction from this court restraining and prohibiting the use of said building, or any room thereof, by any organization other than that composed of veterans, insisting that the expense of maintaining said building, including lighting, heating and janitor service, should be defrayed by the county of Butte out of funds raised by taxation. The respondents, on the other hand, contend that when any room in said building is not in use or occupation by any of the veteran organizations, it is permissible to rent the same to defray the expenses of lighting, heating and janitor service. In other words, to make the building self-sustaining; and that in so doing, the building is not being commercialized. In this particular our attention is called to the practice which prevails in many cities of the state where memorial buildings have been erected, to lease the main auditorium and

other rooms therein at such time, and for such purposes as do not in anywise interfere with the full and confortable enjoyment and occupancy of the different rooms of veterans' organizations, the contention being that when the main auditorium or any particular room would otherwise remain vacant, it is for the benefit of the veterans' organizations that some revenue be derived from the building rather than to permit the same to·remain unused and a charge either upon the organizations composed of veterans or of the counties of which such veteran organizations are residents and taxpayers.

We do not need to further follow the allegations of the petition or to the answer thereto, further than to state that the petition concludes with the prayer that the petitioners be let in to said building; that they be permitted to use the same without making any compensation .therefor; and that the Board of Supervisors be prohibited from permitting said building to be used by any person or organization other than organizations composed of veterans, save and except as to what is called auxiliary associations. To the petition the respondents filed a demurrer as well as an answer, the demurrer being to the effect that the petition does not state facts sufficient to constitute a cause of action. In so far as injunctive relief is asked for in the petition, we find no statement of facts which would justify the issuance of any prohibitory order herein. There are no facts set forth in the petition complying with section 526a of the Code of Civil Procedure; there ·are no facts stated which show any illegal expenditure of money, which indicate any waste or injury to the estate or property of the county. In order that injunctive relief may be had, in addition to showing what we have here mentioned, section 526a of the Code of Civil Procedure limits the right of action to persons possessing the qualifications stated in the section, such as being citizens and taxpayers. The circumstances, so far as the record before us shows, are very similar to the case of *Amusement Syndicate Co.* v. *City of Topeka,* 68 Kan. 801 [74 Pac. 606], where the supreme court of Kansas said: "A private citizen cannot maintain an action to enjoin city officers from allowing use of the city auditorium for entertainments for private profit, even if wrongful, there being no damage peculiar to him." That was an action for in-

junction to restrain the leasing of an auditorium, and it was held that a private citizen not suffering any special damages peculiar to himself, was not entitled to maintain the action, and that such action could only be maintained by relation of the attorney-general.

The buildings to which we have referred were erected in pursuance of the authority given by section 4041f of the Political Code, which reads: "Any County may provide and maintain (1) a home or homes for veteran soldiers, sailors and marines who have served the United States honorably in any of its wars; (2) buildings, memorial halls, or meeting places for the use of patriotic, fraternal and benevolent associations of such persons. For these purposes the Board of Supervisors of any county shall have jurisdiction and power." Then follow seven subdivisions of this section, as amended by the legislature in 1927 (Stats. 1927, p. 207). Subdivision (b) relative to the power of the Board of Supervisors, reads: "To purchase, construct or lease, build or rebuild, furnish or refurnish, or repair any and all such buildings, and to provide all necessary custodians, employees, attendants and supplies for the proper maintenance of the same." And subdivision (d) empowers the board to levy a tax not exceeding three mills on the dollar, on all taxable property in the county, for the purposes of the act. There is nothing in any of the subdivisions of the section referred to which in terms excludes the power of the Board of Supervisors to permit the use of any such building or any room therein, for other purposes or other associations than that of veterans, when the same does not interfere with the comfortable, ordinary and accustomed use of such buildings and the different rooms thereof by organizations composed only of veterans.

In behalf of the petitioners it is argued that the case of *Allied Architects' Association of Los Angeles* v. *Payne*, 192 Cal. 431 [30 A. L. R. 1029, 221 Pac. 209], holds and adjudges that the Board of Supervisors, or the committee or custodian placed in charge of such building possesses no authority to permit the use thereof by any other than a veteran association. While there is language in the opinion in that case which is open to the construction that the author of the opinion entertained the idea that such buildings should properly be limited to the exclusive use of such

organizations, and the case does hold that the Board of Supervisors may erect a building under the act which is devoted exclusively to the use of such organizations, the case does not go to the extent contended for by the petitioners. It is to be observed also that the case primarily was based upon a resolution of the Board of Supervisors of the county of Los Angeles, which specified that the building to be erected should be exclusively used as a meeting place for patriotic, fraternal and benevolent associations ''whose membership shall be composed only of veterans,'' etc.

While we are of the opinion that under the section of the Political Code authorizing the construction of memorial buildings, boards of supervisors possess the authority and power to limit the use thereof and of every room therein, exclusively to veterans, it does not follow that the language should be so narrowly construed as to prevent the incidental use thereof or the incidental use of the rooms therein, such as the main auditorium, in such a manner as not to interfere with the main purposes for which the building has been erected, and at times when such rooms would otherwise be vacant. While the section of the code authorizes the construction of such buildings, in the nature of things and in the ordinary course of events associations of veterans of wars that are past will cease to be. This is peculiarly applicable to cities no larger than the town of Gridley and it would be carrying the idea further than we think the language of the act requires to hold that when the veteran associations referred to have ceased to be, the building must remain vacant or stand as an empty monument. The complaint in this case is directed particularly to the use permitted of the auditorium, but from the facts before us it is apparent that the auditorium having a seating capacity of 1200 is designed for use only on special occasions, and under such circumstances we see no reason why the Board of Supervisors or the committee placed by it in control of the building, should not allow the incidental use of the auditorium for purposes not inconsistent with the objects for which the building was erected, or which do not obstruct or interfere with the use of the building by the different veteran organizations, either free of charge or for a stated compensation, and thus aid in defraying the expenses of maintaining the building. While the law appears to

be well settled that a municipality cannot embark in the construction of buildings for renting or commercial purposes, there is very high authority that a building constructed for municipal purposes may be incidentally leased, or rooms therein leased for hire, when not in use, and when so doing does not interfere with the purposes for which the building has been erected. In 44 C. J. 1092, we find the law prevailing in a large number of jurisdictions stated as follows: ''A municipality may either gratuitously or for compensation permit buildings erected for a municipal purpose to be used incidentally for lawful private purposes, which will not interfere with public use, such as the use of a city hall or other municipal building for lectures, entertainments, etc. While a municipality is without power to erect a building for the mere purpose of renting it out, yet after it has lawfully constructed or leased a building for municipal purposes, it has power to let, sublet, or rent for hire, the building, or a portion thereof, for a limited period of time, and for a lawful use, where the building, or portion thereof, is not presently needed for municipal purposes.'' This text is supported by a large number of authorities. Practically the same language is found in 19 Ruling Case Law, page 771, section 77, where it is said, after stating that a municipality is without authority to engage in erecting buildings for the purposes of renting: ''It seems, however, to be generally conceded that a municipality having erected a building in good faith, for municipal or public purposes, has the right, when such building is no longer used by the municipality, or when parts of it are not needed for public use, or when at intervals the whole building is not so used, and when it will not interfere with its public use, to permit it to be used either gratuitously or for a compensation, for private purposes. Such a temporary, casual and incidental use of unused public property, for the purpose of public economy, does not amount to an unconstitutional invasion of the rights of citizens,'' etc. In 16 American and English Annotated Cases, page 198, the same statement of the law occurs, supported by a large number of cases. In one of the cases this language appears: ''The court is of the opinion that a town having in its townhouse rooms which it had authority to construct as a part of such building, and not having occasion to use them for

the time-being, is not obliged to keep them unoccupied, but may derive a revenue from them by renting them, or may allow them to be used gratuitously.''

The record shows no attempt whatever to commercialize the memorial building at Gridley, as that word is ordinarily understood. It shows, rather, an attempt to make the building self-sustaining, as appears to have been promised by the veteran organizations existing at the time the building was erected. It may be here stated that the record fails to show that the incidental use of the auditorium, as herein referred to, has at any time interfered with the accustomed, usual and ordinary enjoyment of the building, by any organization of veterans. The fact that the Board of Supervisors has appointed a committee to look after the respective buildings does not appear to us to raise any valid legal objections. In the very nature of things there must be someone to look after such buildings. The committee appointed is but the agent of the Board of Supervisors, and as to each of the four buildings it appears that the Board of Supervisors of the district wherein the building is situate, is a member of the committee, and whatever is done by the committee is subject to the control, direction and approval of the Board of Supervisors. Likewise, where there are several different organizations occupying the building, or different rooms therein, reasonable rules and regulations must be adopted in order that the occupation of the building by one organization will not interfere with the reasonable use of the building, or rooms assigned to it by other organizations. Nor do we see any legitimate objection if any one of the organizations using, say, a meeting-room in the building, proposes to use the main auditorium for a public function which is in line with a public entertainment rather than within the limits of what is ordinarily termed a patriotic assemblage, to the exaction of compensation sufficient to cover the expenses attendant upon the use of the auditorium on such occasions. For illustration: If any one of the veteran organizations proposes to give a dance, it cannot be argued that the county would be under the obligation of hiring an orchestra; nor if any one of the organizations proposes to hold a boxing contest, to hire a referee. And if this is true, we do not see how it can be argued that the county would be under obligation to pay for light

and heat on such occasions, irrespective of our views which are hereinafter expressed as to the right of petitioners to occupy the meeting-room originally assigned to its use.

Upon the hearing of this cause it was conceded by counsel that the almost universal practice in the state is to permit the use of auditoriums by other than veteran organizations, and to exact a charge therefor to aid in the upkeep of the buildings.

Have the petitioners, as claimed by them, a right to the use of the memorial building, or any portion thereof, without paying compensation therefor? The answer to this question depends upon the intent and purpose of the legislature in adopting section 4041f of the Political Code. To what extent such occupation may go depends upon the reasonable necessities of the organization. If it be admitted that the petitioners have a right to the use and enjoyment of a meeting-room in said memorial building, that concession can only go to the reasonable requirements of the organization. With a membership of only thirty, we cannot avoid the conclusion that an assignment to it of a meeting-room, of a sufficient capacity to accommodate at least 100 persons, is all that the section requires, together with such incidental use of the remainder of the building as functions in line with the patriotic purposes of the organization may require. With this in view we will examine the section. The second clause of the first paragraph empowers the Board of Supervisors to erect and build memorial halls or meeting places for the use of patriotic, fraternal and benevolent associations of such persons. It was under this provision that the memorial building under consideration was erected. Subdivision (b) of the section carries out and further defines the power of the Board of Supervisors, to wit: "To purchase, construct or lease, build or rebuild, furnish or refurnish, or repair, any such buildings, and to provide all necessary custodians, employees, attendants and supplies for the proper maintenance of the same." It is upon this subdivision that the petitioners base their contention that the legislature intended the use of rooms in memorial buildings should be gratuitous. This subdivision provides for custodians, employees, attendants and supplies. The word "supplies" has a different meaning from the word "materials." (7 Words and Phrases, 3d ed., p. 309.) If the

clause had read, ''and materials for the proper maintenance of the same,'' it is clear that the legislature would have intended only the furnishing by the Board of Supervisors of such articles or substances as would enter into the construction of the building itself, in taking the place of those portions of the building which needed attention, reconstruction or repairing; that the word ''supplies'' carries with it the idea of those things necessary for the enjoyment and occupation of the premises; it does not include furnishings as used in the subdivision because that word is used separately. Thus, it may be reasonably inferred that the intent of the legislature was that light and heat, for the reasonable use and occupation, should go with the building. Custodians, employees and attendants are just as comprehensive as the words ''janitor service.'' Again, a reading of the whole section leads to the conclusion that the legislature had in mind a double purpose—to subserve the public interests of the country by providing for the erection of structures where the thought of patriotism might be given wider currency, and at the same time enable organizations of persons who had engaged in hazardous service for their country to meet and aid in keeping alive the principles upon which the republican form of government must rest. Had it not been intended that the reasonable use of meeting-rooms and other incidental uses of other portions of such buildings, was intended to be gratuitous, there would have been no reason for providing that such buildings should be erected for the uses of organizations of veterans or of those who had shown themselves willing to make the extreme sacrifice for the maintenance of the government. If it had been intended only to provide a meeting place, and rent the same to any such organization, there would have been no occasion for the use of the language which we have stated. There would really have been no occasion for the erection of such buildings under the provisions of the code contained in section 4041f, *supra*. If that was the purpose and intent of the legislature, it added nothing to the uses and purposes of the organizations because they could otherwise have hired their own halls.

Again, it is argued by the respondents that all the provisions of the law are permissive, that is, that the Board of Supervisors may erect a building, and after the erection

thereof, they may provide for its maintenance, etc., or may elect not to do so. While the section of the code appears to be permissive in form, yet when the Board of Supervisors has exercised its election and constructed a building, the carrying out of the purposes expressed in the section necessitates a different construction and changes the permissive form to a mandatory reading in order that the purposes of the act may not be frustrated. This court, in the case of the *County of Los Angeles* v. *State*, 64 Cal. App. 290 [222 Pac. 153], had occasion to examine quite extensively the use of the word "may" in a statute or constitution as interpreted by the cases having to do therewith, and there quoted with approval the following language: "The word 'may' as used in the statute or constitution is often interpreted to mean 'shall' or 'must.' Such interpretation always depends largely, if not altogether on the object sought to be accomplished by the law in which that word is used. It seems to be the uniform rule that where the purpose of the law is to clothe public officers with power to be exercised for the benefit of third persons, or for the public at large, that is, where the public interest or private right requires that the thing should be done, then the language, though permissive in form, is peremptory." In some of the cases there cited the permission given to public officers to levy a tax, in language permissive in form, was held to be mandatory. In the case at bar both public interest and private rights are involved, and the permissive form of the statute, in order to accomplish the purposes undertaken, must be held mandatory if the necessity therefor is shown to exist. This would include the levy of a tax as provided in one of the subdivisions of the section, to carry out the purposes for which the building has been erected. A judgment to that effect, however, must depend upon the necessities of the situation. If no facts or conditions are presented which necessitate a peremptory order directing the levy of a tax, then such order cannot properly be issued. If the maintenance of the building, if the accomplishment of the purposes for which it was erected are otherwise obtainable by legitimate means, the necessity for the levying of a tax does not appear. In other words, the Board of Supervisors cannot be required to levy a tax even though the section be held mandatory, when there is no occasion for the Board of Supervisors so doing.

There is no showing in the record before us of any facts upon which such an order could properly be based. The facts rather lead to the conclusion that if the building is managed and controlled as we have indicated herein we think it may properly be, the general public may not be called upon, through taxation, to furnish the means of maintaining the building, and permitting to the petitioners gratuitous use of all portions thereof reasonably meeting their requirements. ■ The petition asks for relief for an auxiliary association, but no facts are set forth in the petition showing that its membership is composed only of veterans, and therefore it does not come within the purview of the rights to which the petitioners are entitled.

■ Our conclusion is that the petitioners are entitled to the gratuitous use of the meeting-room to which they were originally assigned, and such incidental uses, gratuitously, of other portions of the building as may be in line with the patriotic purposes of the petitioners' organization, and that the Board of Supervisors, by ratifying the act of the committee appointed to look after the building, may adopt such reasonable rules and regulations for the occupation of the memorial hall as will secure to all of the organizations entitled to use the same, equal facilities and opportunities.

Let a writ issue as prayed for by the petitioners, limited in extent, as herein stated, placing petitioners in occupancy and possession without payment of the charge insisted upon by the respondents.

Finch, P. J., and Thompson (R. L.), J., concurred.