TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  | : |  |
| --- | --- | --- |
| OPINION | : | No. 98-1104 |
|  | : |  |
| of | : | May 5, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| ANTHONY S. Da VIGO | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

THE HONORABLE SPENCER B. BATCHELDER, COUNTY COUNSEL, COUNTY OF CALAVERAS, has requested an opinion on the following questions:

1. May a veterans memorial district require a veterans organization to add the district as a named insured on its insurance policy as a condition of allowing the organization to use the district's facilities?

2. Is a veterans memorial district required to obtain voter approval of specifically identified park and recreation facility projects it intends to undertake, or is voter approval required only of the general concept of providing park and recreation facility projects?

3. May a veterans memorial district present a single ballot question to obtain voter approval of a specifically identified park and recreation facility project and voter approval of a special tax to fund the project?

4. If a veterans memorial district imposes a special tax, may it exempt unimproved parcels from the levy?

5. Must the county board of supervisors approve a veterans memorial district's plans for an indoor or outdoor park and recreation facility project prior to a vote of the electorate on the project?

6. Does the approval by a county board of supervisors of the plans for an indoor or outdoor park and recreation facility project prepared by a veterans memorial district require the filing of an environment impact report by the board?

## CONCLUSIONS

1. A veterans memorial district may by rule or regulation require a veterans organization to add the district as a named insured on its insurance policy as a condition of allowing the organization to use the district's facilities for events of public entertainment or where an admission fee is charged.

2. A veterans memorial district is required to obtain voter approval of specifically identified park and recreation facility projects it intends to undertake.

3. A veterans memorial district may present a single ballot question to obtain voter approval of a specifically identified park and recreation facility project and voter approval of a special tax to fund the project.

4. If a veterans memorial district imposes a special tax, it may not exempt unimproved parcels from the levy but may tax such property at a lower rate.

5. The county board of supervisors must approve a veterans memorial district's plans for an indoor or outdoor park and recreation facility project prior to a vote of the electorate on the project.

6. The approval by a county board of supervisors of the plans for an indoor or outdoor park and recreation facility project prepared by a veterans memorial district does not require the filing of an environmental impact report by the board.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Mil. & Vet. Code, §§ 1170-1259)[1] governing the creation of veterans memorial districts. Section 1171 provides:

"A memorial district may be established, maintained, governed, supported, and operated in the manner and for the purposes herein provided, and may exercise the powers and jurisdiction herein expressly granted or necessarily implied."

The powers of a district are exercised by a board of directors (§ 1194), consisting of five members elected by the residents of the district (§ 1197). Section 1191 states:

"(a) Every district may do all of the following:

"(1) Provide and maintain memorial halls, assembly halls, buildings, or meetingplaces, together with suitable indoor and outdoor park and recreation facilities, including swimming pools, picnic areas, and playgrounds, for the use of persons or organizations other than veterans, pursuant to paragraphs (8) and (9), and veteran soldiers, sailors, and marines who have honorably served the United States in any wars or campaigns recognized by law for the purposes of Section 3 of Article XIII of the California Constitution, or for the use of patriotic, fraternal, or benevolent associations of those persons. However, no district shall provide and maintain indoor and outdoor park and recreation facilities, including swimming pools, picnic areas, and playgrounds, unless these projects have been approved by a majority of the voters at either the general district election or at a special election called for that purpose. The question of whether the district shall provide and maintain indoor and outdoor park and recreation facilities may be submitted to the electors of the district by the board on its own motion and shall be submitted by the board upon petition signed by 8 percent of the registered electors of the district, at either the general district election or at a special election called for that purpose. If submitted at a special election, the election shall be called, conducted, governed, and regulated in the same manner as the general district election.

"All plans for indoor and outdoor park and recreation facilities, including swimming pools, picnic areas, and playgrounds, shall be approved initially by the board of supervisors.

_____

[1] Undesignated section references hereinafter are to the Military and Veterans Code.

"(2) Purchase, receive by donation, condemn, lease, or acquire real or personal property necessary or convenient for the construction or maintenance of halls, buildings, meetingplaces, and facilities, and improve, preserve, manage, and control these facilities.

"(3) Purchase, construct, lease, build, furnish, or repair halls, buildings, meetingplaces, and facilities upon sites owned or leased by the district or made available to the district, and provide custodians, employees, attendants, and supplies for the proper maintenance, care, and management of those halls, buildings, meeting-places, and facilities.

"(4) Furnish sites for halls, buildings, meetingplaces, or facilities, to be built either by the district or by or for patriotic, fraternal, or benevolent associations of veterans, if the funds for these sites are supplied by the district or from other sources.

"(5) Enter into agreements with county, municipal, school, park, or other public authorities or agencies conveying, leasing, or making available to the district, either gratuitously or for compensation, sites upon public land for the construction, maintenance, and management by the district of assembly or memorial halls, buildings, meetingplaces, or facilities, and construct and maintain on those sites halls, buildings, meetingplaces, or facilities.

"(6) Sell or lease any district property to the highest responsible bidder, as determined by the board, except as provided by Section 1191.3. The board shall, prior to any sale, make a call for bids and advertise that call pursuant to Section 6062 of the Government Code in a newspaper of general circulation in the district, inviting sealed bids for the sale or lease of the property. The board may either accept the highest responsible bid or reject all bids. The board may require the successful bidder to file with the board good and sufficient undertaking to be approved by the board to insure faithful performance of the contract of sale or lease. No sale or lease shall be transacted, however, if a petition has been filed with the board requesting it not to enter into the sale or lease of the property.

"The petitioner shall have affixed to it, as petitioners, the signatures, indicating place of residence and place of signing, of the electors of the district in a number equal to at least 10 percent of the votes cast in the district at the last preceding general election held in the state.

"If the petition meets these requirements, as determined by the records of the county clerk or registrar of voters for the county or counties in which the district is situated, the board either shall not convey the property or shall submit the matter to the electors of the district to be voted upon at the next primary or general election, or at a special election called for the purpose of ratifying or rejecting the action of the

district to sell or lease the property.

"(7) Sell or lease any district property to any political subdivision, or portion thereof, in which the district is situated for purposes of roads, streets, or highways, or for the improvement of roads, streets, or highways, without regard to the highest responsible bidder but otherwise meeting the petition requirements of paragraph (6).

"(8) Adopt, from time to time, reasonable rules and regulations for the use of halls, buildings, meetingplaces, and facilities by veterans or by organizations of veterans, and to allow the halls, buildings, meetingplaces, and facilities to be used for lawful purposes consistent with the objects of this section by persons or organizations other than veterans either free of charge or for stated compensation to aid in defraying the cost or maintenance of the facilities, if that use will not unduly interfere with the reasonable use of the facilities by veterans' associations.

"(9) Enter into a joint powers agreement for recreational or senior citizens' services within the district.

"(b) In conformance with this section, a district may provide recreational facilities or services at any location within the district regardless of the location of district-owned facilities. A district may not increase its tax levy for the purpose of providing recreational services for persons other than veterans unless that increase is first approved by a majority of the electors of the district who vote upon the proposal."

We are presented with six questions relating to these statutory powers of a district.

1.    Adding the District as a Named Insured

The first inquiry is whether a district may require a veterans organization to add the district as a named insured on its insurance policy as a condition of allowing the organization to use the district's facilities. We conclude that a district may do so in limited circumstances.

Subdivision (a)(8) of section 1191 authorizes a veterans memorial district to "[a]dopt, from time to time, reasonable rules and regulations for the use of halls, buildings, meetingplaces, and facilities by veterans or by organizations of veterans . . . ." Under what circumstances, if any, would the requirement of the naming of the district as an additional insured on an insurance policy be "reasonable"?

In *Ellis* v. *Board of Education* (1945) 27 Cal.2d 322, the court examined whether a school district could require organizations using its facilities to add the district as a named insured on their insurance policies. By statute the district was authorized to adopt reasonable rules and regulations governing the use of its facilities but was required to offer the facilities "free" to the

public, with the school district paying all necessary maintenance expenses. (*Id.*, at pp. 324-325.) The district could require payment for use of its facilities if the group charged an admission fee for the event. (*Id.*, at p. 324, fn. 1.) The court pointed out that the insurance requirement would not insure the district against damage to its property caused by the organizations; rather, it would protect the district against its own liability for the failure to maintain the facilities in a reasonably safe condition. (*Id.*, at p. 327.) The court concluded that ordinarily a property owner could pass on the cost of obtaining its own insurance policy by charging those renting its facilities; however, because the district was required by statute to pay all necessary maintenance expenses, it could not demand that it be named as an additional insured on the policies in question. (*Id.*, at pp. 327-328.) "The use of such property would not be free if the school district required the sponsors of a meeting to share costs of maintenance and management of the buildings and grounds or any part thereof." (*Id.*, at p. 328.)

In 63 Ops.Cal.Atty.Gen 874 (1980) and again in 72 Ops.Cal.Atty.Gen. 149 (1989), we examined a similar proposal requiring a city to be named on insurance policies of boat owners using a city's lagoon. We concluded that under the governing statutes, the city could obtain its own insurance policy and pass on the cost to the boat owners by charging a permit fee but that it could not require the boat owners to add the city as a named insured on the policies.

In keeping with *Ellis* and our prior opinions, we turn to the statutory provisions governing veterans memorial districts to determine whether an insurance policy requirement may be imposed. Here, we note that subdivision (a)(8) of section 1191 expressly authorizes a district to charge "organizations other than veterans . . . to aid in defraying the cost of maintenance of the facilities." By implication, a veterans organization may not be charged for maintenance costs under the principle of *expressio unius est exclusio alterius*, "the expression of certain things in a statute necessarily involves exclusion of other things not expressed . . . ." (*Henderson* v. *Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403; accord, *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) While organizations other than veterans could be required to add the district's name to their insurance policies, subdivision (a)(8) of section 1191 appears to suggest otherwise for veterans organizations by omitting any reference to charging them for maintenance costs.

On the other hand, in *Gridley Camp. No. 104* v. *Board of Supervisors* (1929) 98 Cal.App. 585, the court examined a related statutory scheme and concluded that veterans organizations could be charged for maintenance costs with respect to "public entertainment" events. The court stated:

> ". . . Nor do we see any legitimate objection if any one of the organizations using, say, a meeting-room in the building, proposes to use the main auditorium for a public function which is in line with a public entertainment rather than within the limits of what is ordinarily termed a patriotic assemblage, to the exaction of compensation sufficient to cover the expenses attendant upon the use of the auditorium on such occasions. For illustration: If any one of the veteran

organizations proposes to give a dance, ir cannot be argued that the county would be under the obligation of hiring an orchestra; nor if any one of the organizations proposes to hold a boxing contest, to hire a referee. And if this is true, we do not see how it can be argued that the county would be under obligation to pay for light and heat on such occasions . . . ." (*Id.*, at pp. 594-595.)

Based upon the foregoing case authority, we believe that a "reasonable" rule or regulation may require a veterans memorial district to be named on insurance policies of veterans organizations using district facilities with respect to an event of public entertainment or where an admission fee is charged. In all other situations, the requirement would be unreasonable.

In answer to the first question, therefore, we conclude that a veterans memorial district may by rule or regulation require a veterans organization to add the district as a named insured on its insurance policy as a condition of allowing the organization to us the district's facilities for events of public entertainment or where an admission fee is charged.

2.    Specificity of Voter Approval Requirement

The second inquiry is whether a veterans memorial district is required to obtain prior voter approval of a specifically identified park and recreation facility project it intends to undertake, or whether voter approval is required only of the general concept of the district providing park and recreation facilities. We conclude that the former is statutorily required.

As previously quoted, subdivision (a)(1) of section 1191 contains the following language:

". . . [N]o district shall provide and maintain indoor and outdoor park and recreation facilities, including swimming pools, picnic areas, and playgrounds, unless these projects have been approved by a majority of the voters at either the general district election or at a special election called for that purpose. The question of whether the district shall provide and maintain indoor and outdoor park and recreation facilities may be submitted to the electors of the district by the board on its own motion and shall be submitted by the board upon petition signed by 8 percent of the registered electors of the district . . . ."

The first sentence quoted above suggests that individual projects must be specified in detail for voter approval, while the second sentence supports the suggestion that only a general concept need be submitted to the electorate for approval.

While the term "project" as used in section 1191 has not been expressly defined by the Legislature, we note that words in a statute are ordinarily construed " 'according to the usual, ordinary import of the language employed in framing them.' " (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 43; 81 Ops.Cal.Atty.Gen. 140, 141 (1998).) "Project" commonly

connotes "a specific plan or design," "a devised or proposed plan," or "a planned undertaking." (Webster's New Internat. Dict. (3rd ed. 1961) p. 1813; 60 Ops.Cal.Atty.Gen. 4, 7 (1977).) Significantly, the words "these projects" are expressed in the plural, not as a singular "concept." The second sentence quoted above may be harmonized with the first by having the phrase "provide and maintain indoor and outdoor park and recreation facilities" refer to individual, specifically identified projects. Accordingly, we believe section 1191 requires each "specific plan or design" to be approved by the voters prior to construction or acquisition by the district.

We conclude in answer to the second question that a veterans memorial district is required to obtain voter approval of specifically identified park and recreation facility projects it intends to undertake.

### 3. Presenting Single Ballot Question

The third inquiry is whether a veterans memorial district may present a single ballot question in obtaining voter approval of a specifically identified park and recreation facility project and voter approval of a special tax to fund the project. We conclude that both approval requirements may be combined into a single ballot question.

As indicated in response to the second question, a majority of the voters within a district must approve each park and recreation facility project proposed by the district. In order to fund construction or acquisition of such a project, a district may impose a "special tax."[2] Section 1192.5 provides in part: "A district may impose a special tax pursuant to [sections 50075-50077] of the Government Code." Government Code section 50077 states:

". . . [T]he legislative body of any city, county, or district may, following notice and public hearing, propose by ordinance or resolution the adoption of a special tax. The ordinance or resolution shall include the type of tax and rate of tax to be levied, the method of collection, and the date upon which an election shall be held to approve the levy of the tax. The proposition shall be submitted to the voters of the city, county, or district, or a portion thereof, and, upon the approval of two-thirds of the votes cast by voters voting upon the proposition, the city, county, or district may levy the tax."

We see no reason why a ballot proposed for the voters of a veterans memorial district may not combine approval of a specific project with approval of a special tax to fund the project. If the approval vote is less than 50 percent, the measure would clearly fail, and if it is approved by a two-thirds vote, the measure would obviously be adopted. The only issue remaining would be the consequences of, for example, a 55 percent approval vote. Would any of the 55 percent who approved the project have voted against the project without the special tax provision? That question

---

[2] A special tax is a tax levied to fund a specific governmental project or program. (*City of Dublin* v. *County of Alameda* (1993) 14 Cal.App.4th 264, 281.)

is unanswerable.  Accordingly, we cannot say that in such circumstances the voter approval requirement of section 1191 would be satisfied even with a 55 percent approval vote.  By combining approval of the project with approval of its source of funding, the two are inextricably entwined.  If the funding source fails, the project fails for purposes of section 1191.

In answer to the third question, therefore, we conclude that a veterans memorial district may present a single ballot question in obtaining voter approval of a specifically identified park and recreation facility project and voter approval of a special tax to fund the project.

4.      Exemption of Unimproved Parcels

The fourth inquiry is whether a veterans memorial district may exempt unimproved parcels from the assessment of a special tax.  We conclude that it may not.

Section 1192.5 provides in part that ". . . special taxes shall be applied uniformly to all taxpayers or all real property within the district, except that unimproved property may be taxed at a lower rate than improved property."  There is, of course, a distinction in common parlance between a tax exemption and a lower rate of tax.  A *rate* of tax does not include zero.  Here, section 1192.5 specifies that "all" real property shall be subject to a special tax if one is levied.  The statute does not purport to authorize an exemption of any parcel or class of parcels, and exceptions to the general provisions of a statute must be narrowly construed.  (See *City of Lafayette* v. *East Bay Mun. Util. Dist.* (1993) 16 Cal.App.4th 1005, 1017; 78 Ops.Cal.Atty.Gen. 192, 195 (1995).)  Moreover, when the Legislature has intended to exempt a parcel from tax, it has done so in unmistakable terms. (See, e.g., Rev. & Tax. Code, § 205.5 [disabled veteran's exemption].)

In answer to the fourth question, therefore, we conclude that when a veterans memorial district imposes a special tax, it may not exempt unimproved parcels from the levy but may tax such property at a lower rate.

5.      Approval of Plans by the Board of Supervisors

The fifth inquiry is whether the county board of supervisors must approve a district's plans for a park and recreation facility project prior to a vote of the electorate on the project.  We conclude that it must.

As previously quoted, section 1191, subdivision (a)(1) provides in part:  "All plans for indoor and outdoor park and recreation facilities, including swimming pools, picnic areas, and playgrounds, shall be approved initially by the board of supervisors."  The statute does not expressly state when the board's approval is to be obtained except that it is to be "initially."  Is the supervisors' approval to be obtained prior to submission of the plans to the voters for approval or afterward?

In answering this question, we first note that since the board's approval is to be given of a project's "plans," such approval must necessarily occur before construction or acquisition of the

facility. Hence, to give some meaning to the term "initially," the board's approval must take place prior to the electorate's approval. " '[E]very word and phrase employed [in a statute] is presumed to be intended to have meaning and perform a useful function . . . [and] a construction rendering some words in the statute useless or redundant is to be avoided.' [Citation.]" (*People* v. *Contreras* (1997) 55 Cal.App.4th 760, 764.) If "initially" merely meant prior to construction or acquisition, it need not be in the statute at all.

Moreover, the requirement of the board's approval of the plans is specified in the statute in the context of the voter's approval of the project. The term "initially" in such circumstances indicates that the board's approval is to take place before the vote of the electorate.

Finally, as between the two choices of which approval should come first, it appears more reasonable that the Legislature intended for the board to first approve the plans. Without approval of the plans by the board, the district need not go through the expense and effort of holding an election. Statutes are to be interpreted to provide a reasonable and practical result if possible. (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147; *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166; *Regents of University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 536-537.)

In answer to the fifth question, therefore, we conclude that the county board of supervisors must approve a veterans memorial district's plans for an indoor or outdoor park and recreation facility project prior to a vote of the electorate on the project.

6.    Filing of an Environmental Impact Report

The final inquiry is whether the approval by the count board of supervisors of a district's plans for an indoor or outdoor park and recreation facility project requires the filing of an environmental impact report by the board. We conclude that it does not.

The California Environmental Quality Act (Pub. Resources Code, §§ 21000-21178; "CEQA") requires public agencies to file an environmental impact report for any project they intend to carry out or approve that may have a significant effect on the environment. (Pub. Resources Code, § 21151, subd. (a).) When a project is to be carried out or approved by two or more public agencies, the determination whether the project may have a significant effect on the environment is to be made by the "lead agency." (Pub. Resources Code, § 21165.) The term "lead agency" refers to the public agency that has the principal responsibility for carrying out or approving the  project. (Pub. Resources Code, § 21067.) The term "public agency" includes a district. (Pub. Resources Code, § 21063.)

Here, the project must be initially approved by the county board of supervisors, but it is the veterans memorial district that must carry out the project. Which of these two agencies is required to act as the lead agency for purposes of preparing an environmental impact report?

The Legislature has conferred upon the Office of Planning and Research the authority to adopt guidelines implementing CEQA, including specifying the procedures and criteria for designating a lead agency. (Pub. Resources Code, §§ 21083, 21087.) The administrative regulations provide in part:

> "Where two or more public agencies will be involved with a project, the determination of which agency will be the lead agency shall be governed by the following criteria:
>
> "(a)     If the project will be carried out by a public agency, that agency shall be the lead agency even if the project would be located within the jurisdiction of another public agency."  (Cal. Code Regs., tit. 14, § 15051.)

Since here the veterans memorial district would be responsible for carrying out the proposed project, the district would be required to prepare the environmental impact report for the project under the CEQA guidelines.  The approval of the plans by the board of supervisors does not itself trigger the filing requirement in such circumstances.

In answer to the sixth question, therefore, we conclude that the initial approval by the county board of supervisors of the plans for an indoor or outdoor park and recreation facility project prepared by a veterans memorial district does not require the filing of an environmental impact report by the board.

* * * * *